# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

MATHEW CHASE GILBERT,

Plaintiff,

v.

JACLYN HILL, JACLYN HILL, LLC
& JACLYN HILL COSMETICS, LLC,

Defendants.

_____/

Case No.: 8:16cv1114T33JSS

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

## **VERIFIED COMPLAINT**

MATHEW CHASE GILBERT (hereinafter "Mathew" or "Plaintiff"), for his VERIFIED COMPLAINT against Jaclyn Hill (hereinafter "Jaclyn" or "Defendant"), Jaclyn Hill, LLC & Jaclyn Hill Cosmetics, LLC (hereinafter collectively "Defendants") upon personal belief and information hereby alleges as follows:

### **JURISDICTION AND VENUE**

1. This court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this is a claim for copyright infringement arising under the Copyright Act of the United States, 17 U.S.C. § 101, et seq.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1-3) because Defendants reside and have their principal place of business in this judicial district and all or a substantial part of the events giving rise to this claim occurred in this judicial district.



1

3. This court has personal jurisdiction because Jaclyn Hill resides in this judicial district, and Jaclyn Hill, LLC and Jaclyn Hill Cosmetics, LLC are Florida Limited Liability Corporations doing business in this judicial district.

## PARTIES

4. Mathew Chase Gilbert resides at 1809 Rebecca Rd., Lutz, Florida.

5. Jaclyn Hill resides at 622 Tropical Breeze Way, Tampa, Florida.

6. Jaclyn Hill, LLC is a Florida limited liability corporation with its principal place of business listed as 622 Tropical Breeze Way, Tampa, Florida.

7. Jaclyn Hill Cosmetics, LLC is a Florida limited liability corporation with its principal place of business listed as 622 Tropical Breeze Way, Tampa, Florida.

## FACTS

8. Mathew Chase Gilbert and Jaclyn Hill met approximately seven years ago while attending Ringling College of Art and Design in Sarasota, Florida.

9. Mathew and Jaclyn developed a very close friendship and spent countless hours together. In fact, they became such close friends that Mathew was a member of Jaclyn's bridal party. Mathew provided emotional support and guidance through many difficult times in Jaclyn's life.

10. Although Jaclyn dropped out of Ringling College of Art and Design after only a few months, Mathew and Jaclyn remained close friends, often meeting in Tampa, where Jaclyn resided.

11. In or about 2013, Jaclyn began "blogging" on the Internet and performing make-up tutorials on YouTube in an effort to create a recognizable and marketable talent, as well as a personality, brand and profitable business related to cosmetics.

2

12. In or about 2013, Mathew possessed a marketable talent as an artist and designer.

13. In or about 2013, Mathew designed and created a business logo using Jaclyn's initials in an artistic and stylized manner, and incorporated the logo into branding slogans such as "Jaclyn Hill Cosmetics" and "Jaclyn Hill Professional Makeup Artist" (See Exhibit "A").

14. In or about 2013, Mathew and Jaclyn had no contract or employment relationship and Jaclyn did not commission Mathew to create designs.

15. In or about 2013, Mathew told Jaclyn that if her cosmetic business gained popularity and success, he hoped the logo and branding he designed could serve as publicity for his skills as a graphic designer, as well as a financial benefit in the form of unspecified payment and/or a position in Jaclyn's future business.

16. Jaclyn assured Mathew that if she became successful, there would be a place for him in her business designing and marketing.

17. Jaclyn's blog and YouTube presentations gained astonishing notoriety, and cognizant of their friendship, Mathew's manager at Nordstrom approached him to see if Jaclyn could make a "celebrity" appearance at the opening of TOPSHOP at Nordstrom's. Mathew facilitated this appearance for Jaclyn and even "styled" her for the event, lending his time and artistic talent.

18. Jaclyn gained even more recognition and began to appear at other retail outlets as a local cosmetic personality or celebrity. Recognizing Mathew's talent as an artist and graphic designer, Jaclyn readily used the logo and branding created by Mathew in addition to other talents, such as creating advertising pages (See Exhibit "B").

19. Over time, Jaclyn attracted national recognition on social media, and the logos and branding Mathew created were used on Jaclyn's YouTube pages and Internet web page www.jaclynhillmakeup.com, as well as national marketing campaigns for cosmetic products. (See Exhibit "C").

20. At no time did Jaclyn give credit or recognition to Mathew's logo, branding or artistic design assistance, although she used it extensively to market herself and create a national Internet personality.

21. In the world of graphic design, fashion and style, receiving recognition at events or on the Internet is integral to building a business and becoming better known.

22. Jaclyn exploited her friendship with Mathew and would often simply expect Mathew to modify his designs or help style her events without regular compensation or professional recognition.

23. Jaclyn also used variations of Mathew's logo and branding for collaborations with Gerard Cosmetics, Morphe Brushes and other companies, which earned Jaclyn thousands of dollars.

24. When Jaclyn was working on a potential collaboration with Z Palette, Mathew created a mock-up for a Z Palette product utilizing the artistic logo he had created, placing his logo on the product (See Exhibit "D").

25. Mathew also proposed product materials, artistic design, logo placement and packaging for a personal make up line that Jaclyn hoped to launch.

26. Over the past two years, Jaclyn Hill, a twenty-five year old Ringling College of Art and Design drop-out, has promoted herself as a "professional makeup artist" and become a national cosmetics phenomenon through the use of YouTube, Twitter and her website www.jaclynhillmakeup.com, as well as other internet mechanisms.

27. Jaclyn Hill has become nothing short of a national celebrity in the fashion and cosmetics industry with thousands of followers, and as a result of her popularity and branding, she has received significant financial compensation and recognition.

28. Jaclyn is regularly compensated for personal appearances and her endorsement of various beauty products, and it is reasonably estimated that she has received hundreds of thousands of dollars as a direct result of products being featured on her Internet sites, which to this day continue to use Mathew's logo and branding.

29. On or about January 9, 2015, Jaclyn presented Mathew with a document that was purportedly prepared by her attorney. Exploiting Mathew's trust, which was founded upon their close friendship, Jaclyn asked Mathew to simply sign the document, explaining to him that signing the document basically acknowledged he was not an owner in her company (See Exhibit "E").

30. Jaclyn also told Mathew that "everyone in her family" had to sign the *same document* as a business precaution.

31. Based upon Jaclyn's fraudulent misrepresentation of the purpose and content of the document, Mathew signed it without reviewing it or receiving a copy.

32. Unbeknownst to Mathew, the document purported to be a Work for Hire Agreement which transferred to Jaclyn all past, current and future rights to Mathew's designs; including the artwork, logos and branding he had already created back in 2013, all in exchange for *ten dollars.*

33. Mathew did not, in fact, receive ten dollars upon signing the document.

34. After being fraudulently induced to sign the unconscionable and unenforceable document, Mathew continued to provide his professional expertise and graphic design skills to Jaclyn in support of her success, without knowledge of Jaclyn's deception or the document's actual content.

35. In May 2015, a mutual friend asked Mathew if he had registered a copyright for the logo he created for Jaclyn. The friend was concerned about Mathew, because she learned that Jaclyn, in her climb to fame and fortune, tried to misappropriate another friend's work.

36. Mathew became concerned and immediately contacted Jaclyn to confront her about any possible misappropriation of his artwork.

37. During this conversation, Jaclyn, for the first time, informed Mathew that the document he had signed transferred all rights and ownership of his artwork to her for the sum of ten dollars.

38. Mathew, in disbelief, demanded to see a copy of the document.

39. On May 21, 2015, Robin Eilers, (Jaclyn's mother and Registered Agent for Jaclyn Hill, LLC), sent Mathew an unsigned copy of the Work for Hire Agreement via email, stating she had the signed copy on file. This was the first time Mathew had actually received a copy of the document to review (See Exhibit "F").

40. Mathew later received a signed copy of the Agreement, which had "January 9" hand-written on the date lines, but "2014" typed into the body of the document.

41. The year on the document was, in fact, incorrect. The metadata in the Microsoft Word document Mathew received via email shows that the original document was *created* on September 25, 2014, and therefore it could not possibly have been *signed* on January 9, 2014.

42. The most logical explanation with regard to the incorrect date, suggests Jaclyn's attorney created the document on September 25, 2014, presuming it would be presented to Mathew Gilbert that same year; however, it was actually presented to him nine days into 2015, and the year that was originally typed into the Agreement was not changed when "January 9" was added by hand.

43. On May 22, 2015, (the day after receiving a copy of the document via email and learning he had been duped into signing a sham Work for Hire Agreement) Mathew applied for a copyright for the logo he created, and uploaded a digital copy of the design (See Exhibit "G").

44. Thereafter, Mathew immediately became uninvolved in all design and styling matters with Jaclyn Hill, having realized for the first time that he had been used, duped and defrauded by his friend.

45. Jaclyn continued to use Mathew's artwork on her Internet marketing sites, despite the fact that Mathew objected and denied knowing the content of the sham Work for Hire Agreement.

46. Jaclyn Hill has received social notoriety, professional recognition and significant financial compensation while utilizing the logo, branding and artistic designs created and copyrighted by Mathew, without providing any meaningful compensation or recognition.

47. On or about October 14, 2015, Mathew, by way of counsel, sent a "cease and desist" letter to Jaclyn Hill, as well as a demand for compensation for the use of his logo, branding and artistic design.

48. On November 3, 2015, Jaclyn Hill responded to the "cease and desist" demand by way of counsel, and claimed that she owned Mathew's work by virtue of the Agreement he signed.

49. Jaclyn Hill, Jaclyn Hill, LLC, Jaclyn Hill Cosmetics LLC, and Jaclyn Hill Makeup (www.jaclynhillmakeup.com) continue to use Mathew Gilbert's artwork for marketing and financial gain, without permission and without compensation.

## COUNT I
## COPYRIGHT INFRINGEMENT

50. Plaintiff, Mathew Chase Gilbert, incorporates and re-alleges paragraphs 1 through 49 of this Verified Complaint as though fully set forth herein.

51. Mathew Gilbert is, and at all relevant times has been, the owner of the logo and design branding used by Defendants by virtue of having been the sole individual who created said property and registered the copyright.

52. Mathew Gilbert has the exclusive right, under 17 U.S.C. §106 to reproduce or distribute his copyrighted image, artwork, and derivative branding designs in conjunction with the image.

53. Without permission, and in defiance of a specific cease and desist demand, Defendants have displayed, and continue to display, Mathew Gilbert's images and derivative images at www.jaclynhillmakeup.com and other Internet sites.

54. Mathew Gilbert's exclusive rights to his copyrighted work have been violated.

55. Defendants induced, caused or materially contributed to the infringement.

56. Defendants have actual knowledge of the infringement.

57. Defendants have acted willfully.

## COUNT II
## FRAUD IN THE INDUCEMENT

58. Plaintiff incorporates and re-alleges paragraphs 1 through 49 of this Verified Complaint as though fully set forth herein.

59. Jaclyn Hill made a false statement to Mathew Gilbert concerning a material fact in the inducement, by representing to him that a document was an acknowledgement that he didn't own part of the her company, when in truth, the document actually purported to be a Work For Hire Agreement that assigned his artwork to Jaclyn Hill.

60. Jaclyn Hill knew her representation was false, and knew that Mathew Gilbert never agreed to assign his work or authorize its unrestricted use in exchange for ten dollars.

61. Mathew Gilbert, in fact, would have never knowingly signed a document assigning his artistic work to Jaclyn Hill or authorizing its unrestricted use in exchange for ten dollars.

62. Jaclyn Hill intended her misrepresentation to induce Mathew Gilbert to sign a document that in reality purported to be a Work for Hire Agreement and an assignment of artistic work in exchange for ten dollars.

63. Mathew Gilbert relied upon Jaclyn Hill's misrepresentation and signed a misdated sham Work for Hire Agreement (signed two years after the artwork was actually created), and based upon his reliance, Jaclyn Hill claimed ownership and exclusive use of his work. In fact, he only continued to help Jaclyn after signing the document because he was unaware of its true content and purpose.

## COUNT III
## FRAUDULENT MISREPRESENTATION

64. Plaintiff incorporates and re-alleges paragraphs 1 through 49 of this Verified Complaint as though fully set forth herein.

65. Jaclyn Hill falsely stated that the document she presented to Mathew Gilbert simply acknowledges he did not own part of her business, a material fact.

66. Jaclyn Hill knew that the representation she was making to Mathew Gilbert was false in that the document actually purported to assign the rights to all of the intellectual property created by Mathew to Jaclyn, for ten dollars.

67. Jaclyn Hill intended for her misrepresentation to induce Mathew Gilbert to sign the document, assign his artwork to her, and continue to help.

68. Mathew Gilbert relied on the false representation made by Jaclyn Hill, who he reasonably believed to be a loyal and trustworthy friend.

## COUNT IV
## UNJUST ENRICHMENT

69. Plaintiff incorporates and re-alleges paragraphs 1 through 49 of this Verified Complaint as though fully set forth herein.

70. Mathew Gilbert conferred a benefit upon Jaclyn Hill by creating a logo and artistic branding slogans for her, at a time when Jaclyn Hill was an unknown, unemployed and self-proclaimed "professional makeup artist" who dropped out of school and could not have otherwise paid for his artistic talent and services.

71. Jacklyn Hill not only accepted Mathew Gilbert's contribution, but specifically used his contribution to establish a brand and catapult herself into national fame, social stardom and financial success.

72. Jacklyn Hill has retained the benefit, and in doing so has earned hundreds of thousands of dollars, creating circumstances that make it inequitable for her to retain the benefit without paying the value thereof.

73. Jaclyn Hill's allegation that Mathew Gilbert retroactively assigned the ownership of all of his work, and agreed to its unrestricted use, for the sum of ten dollars, even if true, is wholly inequitable in light of the financial benefit now known.

## RELIEF REQUESTED

WHEREFORE, Mathew Chase Gilbert asks this Court to enter judgment against Defendants and all persons acting in concert or participation with Defendants, granting the following relief:

74. Temporary and permanent injunctions preventing and restraining infringement of Mathew Chase Gilbert's artwork and design by Defendants under 17 U.S.C. § 502;

75. An order requiring Defendants to destroy all actual and digital copies of logos, images and artwork created by Mathew Chase Gilbert in the possession of Defendants as well as all digital copies uploaded to Internet sites by Defendants;

76. An award of damages suffered by Mathew Chase Gilbert by Defendants as a result of Defendants' infringement, plus profits attributable to the infringement under 17 U.S.C § 504;

77. Alternatively, an award of statutory damages for each infringement under 17 U.S.C. 504;

78. A judgement that Defendants' infringement was willful;

79. An award of full costs and reasonable attorney's fees under 17 U.S.C. 505, and;

80. Such other relief as this Court may deem be just and proper.

## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38(b), Mathew Chase Gilbert hereby makes his demand for trial by jury for all issues so triable.

**Respectfully Submitted,**

Signed this 5th day of May, 2016

__/s/Keith Hanenian____
Keith Hanenian, Esquire
Florida Bar.: 873225
Email: Khanenian@chfloridalaw.com
efiling@chflroidalaw.com
Cristal Hanenian, PA
609 E. Jackson Street
Suite 100
Tampa, Florida
813-258-8500
813-258-8501
*Attorney for the Plaintiff*